**MEMORANDUM ENDORSEMENT**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __08/19/2020__

<u>Jane Doe v. NYS Dept. of Labor</u>

19-cv-2427 (NSR)

The Court reviewed Plaintiff's Emergency Motion to Reopen and Leave to Amend Complaint (ECF No. 16.)  On August 28, 2019, Plaintiff filed a Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), which voluntarily dismissed the action without prejudice against the Defendant, the NYS Department of Labor.  (ECF No. 15.)

Plaintiff now seeks to file new claims against new defendants.  Plaintiff's application is therefore denied.  Should she wish to pursue these new claims, Plaintiff must commence a new action.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 16.  The Clerk of the Court is further directed to mail a copy of this endorsement to *pro se* Plaintiff at the address listed on the docket and file proof of service.

Dated:  August 19, 2020
White Plains, NY

SO ORDERED.

Nelson S. Román, U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
JUL 06 2020
U.S.D.C.
WP

*Natasha Armstrong (maiden name)*

Write the full name of each plaintiff or petitioner.

Case No. _19_ CV _2427_

-against-

*NYS Dept of Labor*

Write the full name of each defendant or respondent.

**NOTICE OF MOTION**

Emergency motion to reopen and leave to amend complaint and emergency motion to seal original complaint and proposed amended complaint; leave to file pseudonymously

PLEASE TAKE NOTICE that *Plaintiff* _____
plaintiff or defendant

*Natasha Armstrong* is making the motion
name of party who is making the motion

requests that the Court: I am asking to reopen a complaint I previously dismissed (attached). I am asking for permission to submit a new complaint with a different defendant. I am asking for the old and new complaint to be filed under seal with NO ONLINE access (No electronic docket). Fed. R. Civ. P. 5.2(d), 60(b)(1), and 15(a)(2); American Bar Assoc. rules 1.9(c)(1) and 8.4(d) Laws: False Claims Act, Omnibus Crime Control, UN Convention Against Corruption, & UN

Briefly describe what you want the court to do. You should also include the Federal Rule(s) of Civil Procedure or Convention on the statute under which you are making the motion, if you know.                    the Rights of Persons with Disabilities

In support of this motion, I submit the following documents (check all that apply):

☐ a memorandum of law

☒ my own declaration, affirmation, or affidavit

☒ the following additional documents:
1. Dismissed complaint
2. UN Laws
3. Text message

_7/3/2020_
Dated

Signature

*Natasha Armstrong*
Name

Prison Identification # (if incarcerated)

_P.O. Box 52_  _Glenmont_ _NY_ _12077_
Address        City       State   Zip Code

_518-421-8517_
Telephone Number (if available)          E-mail Address (if available)

SDNY Rev: 5/24/2016

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Natasha Armstrong (maiden name)

_____

Fill in above the full name of each plaintiff or petitioner.

Case No. 19 CV 2427

-against-

NYS Dept of Labor

_____

_____

_____

Fill in above the full name of each defendant or
respondent.

## DECLARATION

Plaintiff Emergency Motion to reopen, amend, file under seal
Pseudonymously

Briefly explain above the purpose of the declaration, for example, "in Opposition to Defendant's
Motion for Summary Judgment."

I, Natasha Armstrong, declare under penalty of perjury that the

following facts are true and correct:

In the space below, describe any facts that are relevant to the motion or that respond to a court
order. You may also refer to and attach any relevant documents.

I am asking to resume and amend my prior claim. The
law firm that I retained to help me with my NYS Human
rights complaint was not on my side. I told the lawyers
one of the supervisors involved in my complaint had a
criminal record (but was allowed to work at a criminal

Rev. 6/30/16

justice agency), Myself and other black employees were required to undergo a FBI criminal background check (Omnibus Crime Control and Safe Streets Act of 1968 – 42 U.S.C § 3789d). The senior employment lawyer and partner in the firm is a state legislator (Phillip G. Steck). If I succeeded with my Human Right complaint and the EEOC investigated the state would lose grant funding. This would directly impact Steck financially. So the firm dropped me as a client & the Human Rights complaint was dismissed as untimely. The State told the EEOC I filed too late to cover the fact they were discriminating against black employees to continue getting federal grant funds (False Claims Act 31 U.S.C 3729 / Falsely certifying compliance with statute, regulation, or contract term that is a "prerequisite to payment," U.S ex Rel. Mikes v. Straus, 274 F.3d 687 (2nd Cir, 2001)). Steck is suing in federal court claiming no one was harmed as a result of him being a lawmaker and active attorney (Steck et al v. DiNapoli et al 42 – 1983 vp). If I cannot reopen my case . . .

Attach additional pages and documents if necessary.

Executed on (date)

Signature

Name

Prison Identification # (if incarcerated)

Address            City            State       Zip Code

Telephone Number (if available)

E-mail Address (if available)

Page 2

...and have a judge determine what happened to me was wrong, I cannot protest Steck's claim. I needed time to learn the law which is why I withdrew the case - this should be considered "excusable neglect" and I should be able to reopen the cas.

I am asking to amend and file a new complaint pseudonymously; the plaintiff listed as Jane Doe, and for the defendent to be the USA / William Barr in his official capacity as Attorney General. Good cause for this request exist because:

1) Under the Convention on the Rights of Persons with Disabilities (UN) Article 22 - people with disabilities have a right to privacy. Under the ADA the federal government requires people with disabilities to disclose their Health info to employers in order to receive reasonable accomadations. However, the federal government failed in their duty to ensure New York State complied with international treaties and federal law which is how I ended up with a supervisor

**Attach additional pages and documents if necessary.**

---

Executed on (date)                     Signature

Name                                   Prison Identification # (if incarcerated)

Address                    City        State        Zip Code

Telephone Number (if available)        E-mail Address (if available)

with a criminal record who thought it was okay to disclose my medical information publically. So now I have standing to bring a complaint against the V.I.S.A through the United Nations (form attached). If I can make an international claim against the USA, I should be able to bring a claim in federal court.

2) As a Whistleblower you are entitled to privacy under the false claims act.

3) After I dismissed my prior complaint I received a text message about arrest (attached)

4) I am asking for the court to allow me to proceed pseudonymously throughout pretrial proceedings because I intend to file for summary judgement.

Finally, I am asking to file under seal per UN Convention against Corruption (Article 32 and 33). I am alleging criminal conduct and the A.G. may wish to bring charges so it would be best to keep this confidential. (I am fine with the A.G. Knowing who I am but I am asking for privacy in the public domain.)

Attach additional pages and documents if necessary.

7-3-2020
**Executed on (date)**

**Signature**

Natasha Armstrong (maiden name)
**Name**

**Prison Identification # (if incarcerated)**

P.O. Box 52    Glenmont    NY    12077
**Address**    **City**    **State**    **Zip Code**

518-421-8517
**Telephone Number (if available)**    **E-mail Address (if available)**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Natasha Armstrong (formerly)

|   |   |   |
|---|---|---|
| Plaintiff(s) | ) | **NOTICE OF VOLUNTARY** |
| | ) | **DISMISSAL PURSUANT TO** |
| v. | ) | **F.R.C.P. 41(a)(1)(A)(i)** |
| | ) | |
| NYS Dept of Labor | ) | Case No.: 19-CV-2427 (NSR) |
| | ) | |
| Defendant(s) | ) | |
| | ) | |
| | ) | |

### NOTICE OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i)

Pursuant to F.R.C.P. 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) Natasha Armstrong c (formerly) and or their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice against the defendant(s) NYS Dept of Labor

Date: 8/19/2019

_____
*Signature of plaintiffs or plaintiff's counsel*

P.O. Box 52
*Address*

Glenmont NY 12077
*City, State & Zip Code*

_____
*Telephone Number*

00:01 MA 61 9UA 9102
! TINU TEKCOD YNDS
DEVIECER



2/7/2019 at 11:48 AM

−0:28

**Transcription Beta**

"028 so before this matter goes to the federal court house or before you get arrested please call immediately on our department number 814-647-2665 I repeat it's 814-647-2665 thank you..."

# Convention on the Rights of Persons with Disabilities

## Article 22 - Respect for privacy

1. No person with disabilities, regardless of place of residence or living arrangements, shall be subjected to arbitrary or unlawful interference with his or her privacy, family, or correspondence or other types of communication or to unlawful attacks on his or her honour and reputation. Persons with disabilities have the right to the protection of the law against such interference or attacks.

2. States Parties shall protect the privacy of personal, health and rehabilitation information of persons with disabilities on an equal basis with others.

**This treaty was signed but not yet been ratified by the USA. So, I've included these references to note it's been cited in New York State cases:**

### In re Guardianship of Dameris L.

38 Misc. 3d 570 (N.Y. Surr. Ct. 2012)

In re Dameris L

2012 N.Y. Slip Op. 22386 (N.Y. Surr. Ct. 2012)

In re Proceeding for the Appointment of A Guardian for Leon Pursuant to SCPA Article 17–A

43 N.Y.S.3d 769 (N.Y. Surr. Ct. 2016)

In re Appointment Of a Guardian for Leon

2016 N.Y. Slip Op. 51393 (N.Y. Surr. Ct. 2016)

In re Zhuo

42 N.Y.S.3d 530 (N.Y. Surr. Ct. 2016)

In re Michelle M.

41 N.Y.S.3d 719 (N.Y. Surr. Ct. 2016)

# UNITED NATIONS CONVENTION AGAINST CORRUPTION

*Article 32. Protection of witnesses, experts and victims*
1. Each State Party shall take appropriate measures in accordance with
its domestic legal system and within its means to provide effective protection
from potential retaliation or intimidation for witnesses and experts who give
testimony concerning offences established in accordance with this Convention
and, as appropriate, for their relatives and other persons close to them.
2. The measures envisaged in paragraph 1 of this article may include,
inter alia, without prejudice to the rights of the defendant, including the right
to due process:
*(a)* Establishing procedures for the physical protection of such persons,
such as, to the extent necessary and feasible, relocating them and permitting,
where appropriate, non-disclosure or limitations on the disclosure of information
concerning the identity and whereabouts of such persons;
*(b)* Providing evidentiary rules to permit witnesses and experts to give
testimony in a manner that ensures the safety of such persons, such as permitting
testimony to be given through the use of communications technology such
as video or other adequate means.
3. States Parties shall consider entering into agreements or arrangements
with other States for the relocation of persons referred to in paragraph 1 of this
article.
4. The provisions of this article shall also apply to victims insofar as they
are witnesses.
5. Each State Party shall, subject to its domestic law, enable the views
and concerns of victims to be presented and considered at appropriate stages of
criminal proceedings against offenders in a manner not prejudicial to the rights
of the defence.

*Article 33. Protection of reporting persons*
Each State Party shall consider incorporating into its domestic legal system
appropriate measures to provide protection against any unjustified treatment for
any person who reports in good faith and on reasonable grounds to the competent
authorities any facts concerning offences established in accordance with
this Convention.

Go to navigation | Go to content

English | Français | Español | русский | العربية | 中文

WHAT ARE HUMAN RIGHTS?        DONATE

HOME        ABOUT US        ISSUES        HUMAN RIGHTS BY COUNTRY        WHERE WE WORK        HUMAN RIGHTS BODIES        NEWS AND EVENTS        PUBLICATIONS AND RESOURCES

English > Human Rights Bodies > TBPetitions

# Human Rights Treaty Bodies - Individual Communications

23 FAQ about Treaty Body complaints procedures

## Procedure for complaints by individuals under the human rights treaties

### Introduction

Anyone may bring a human rights problem to the attention of the United Nations and thousands of people around the world do so every year. This page explains the procedures open to individuals who claim that they are a victim of a violation of rights contained in international human rights treaties.

It is through individual complaints that human rights are given concrete meaning. In the adjudication of individual cases, international norms that may otherwise seem general and abstract are put into practical effect. When applied to a person's real-life situation, the standards contained in international human rights treaties find their most direct application. The resulting body of decisions may guide States, non-governmental organizations (NGOs) and individuals in interpreting the contemporary meaning of the treaties concerned.

Individuals have increasingly acquired the means to vindicate their rights at the international level. This page examines complaints that are brought under international human rights treaties 1. Since the early 1970s international complaint mechanisms have developed apace, and complainants can now bring claims to the United Nations concerning violations of their rights contained in the nine so-called "core" human rights treaties. The nine treaties concern: (i) civil and political rights, set out in the International Covenant on Civil and Political Rights; (ii) torture and cruel, inhuman or degrading treatment or punishment, defined in the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment; (iii) racial discrimination, proscribed by the International Convention on the Elimination of All Forms of Racial Discrimination; (iv) gender discrimination, defined in the Convention on the Elimination of All Forms of Discrimination against Women; (v) rights of persons with disabilities, set out in the Convention on the Rights of Persons with Disabilities; (vi) protection of all persons from enforced disappearance, established by the International Convention for the Protection of All Persons from Enforced Disappearance; (vii) rights of migrants workers and members of their families laid down by the International Convention on the Protection of the Rights of All Migrant Workers and Members of their Families; (viii) economic, social and cultural rights, set out in the International Covenant on Economic, Social and Cultural Rights and; (ix) rights of the child, contained in the Convention on the Rights of the Child and its Optional Protocols. The complaint mechanisms are designed to be accessible to the layperson. It is not necessary to be a lawyer or even familiar with legal and technical terms to bring a complaint under the treaties concerned.

Overview of individual complaints procedures
Against whom can a complaint under a treaty be brought?
Who can bring a complaint?
What information do you need to provide to bring a complaint?
When can you make a complaint under the human rights treaties?
The procedure
Special circumstances of urgency and sensitivity
The admissibility of your case
The merits of your case
Consideration of your case
What happens once the Committee decides your case?

## Procedures of the individual Committees

Procedure under the Optional Protocol to the International Covenant on Civil and Political Rights (OP-ICCPR)

Select a country        GO

### Committees

CERD | CESCR | CCPR | CEDAW | CAT | CRC | CMW | SPT | CRPD | CED

Glossary of terms

Texts

### Individual complaints

How to submit complaints and inquiries

Intimidation and reprisal for cooperation with the treaty bodies

### Treaty Body Database

Treaty Body Database Homepage

Common core documents

Late and non-reporting by States parties

Deadline for the submission of documentation by State parties

Calendar of country reviews by treaty bodies

Documents search

Adoption of general comments

### Strengthening and Coordination between the treaty body system

Follow up action against reprisals

Elections for treaty body membership

Treaty body strengthening

Meeting of Chairpersons

Procedure under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment **(CAT)**

Procedure under the International Convention on the Elimination of All Forms of Racial Discrimination **(CERD)**

Procedure under the Optional Protocol to the Convention on the Elimination of All Forms of Discrimination against Women **(OP-CEDAW)**

Procedure under the Optional Protocol to the Convention on the Rights of Persons with Disabilities **(OP-CRPD)**

Procedure under the International Convention for the Protection of All Persons from Enforced Disappearance **(CED)**

Procedure under the International Convention on the Protection of the Rights of All Migrant Workers and Members of Their Families **(CMW)**

Procedure under the Optional Protocol to the International Covenant on Economic, Social and Cultural Rights **(OP-ICESCR)**

Procedure under the Optional Protocol (on a communications procedure) to the Convention on the Rights of the Child **(OPIC-CRC)**

How to direct complaints to the treaty bodies - Contact details

**Other resources**

Training Package on Reporting to the Treaty Bodies

Documentation tools for State Parties and Permanent Missions

**The United Nations Human Rights Treaty System (Fact Sheet No. 30/Rev.1):** Arabic | English | French| Russian | Spanish **(PDF)**

Universal Human Rights Index

Status of ratification interactive dashboard

Status of ratification by country or by treaty

World Map on reporting **(PDF)**

World maps on individual communications

## Overview of the individual complaints procedure

A human rights treaty is an international agreement, which imposes binding obligations to protect and promote rights and freedoms on States that officially accept it (commonly through "ratification" or "accession"); those States are referred to as States parties to the treaty. For the full texts of the treaties, click here.

The basic concept of complaint mechanisms under the human rights treaties is that anyone may bring a complaint against a State party alleging a violation of treaty rights to the body of experts monitoring the treaty. These "treaty bodies", as they are often called, are Committees composed of independent experts elected by States parties to the relevant treaty. They are tasked with monitoring implementation in States parties of the rights set forth in the treaties and with deciding on complaints brought against those States. While there are some procedural variations between the nine mechanisms, their design and operation are very similar. Accordingly, what follows is a general description of the typical features of a complaint under any of the nine treaties. Readers should then refer to the descriptions of the individual treaties, which identify aspects differing from the general norm.

9 Treaty bodies (CCPR, CERD, CAT, CEDAW, CRPD, CED, CMW, CESCR and CRC) may, under certain conditions, consider individual complaints or communications from individuals.

## Not all treaty body based complaint mechanisms have entered into force.

Currently, eight of the human rights treaty bodies (CCPR, CERD, CAT, CEDAW, CRPD, CED, CESCR and CRC) may, under certain conditions, receive and consider individual complaints or communications from individuals:

**The Human Rights Committee (CCPR)** may consider individual communications alleging violations of the rights set forth in the International Covenant on Civil and Political Rights by States parties to the First Optional Protocol to the International Covenant on Civil and Political Rights;

**The Committee on Elimination of Discrimination against Women (CEDAW)** may consider individual communications alleging violations of the Convention on the Elimination of All Forms of Discrimination against Women by States parties to the Optional Protocol to the Convention on the Elimination of Discrimination against Women;

**The Committee against Torture (CAT)** may consider individual complaints alleging violations of the rights set out in the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment by States parties who have made the necessary declaration under article 22 of the Convention;

**The Committee on the Elimination of Racial Discrimination (CERD)** may consider individual petitions alleging violations of the International Convention on the Elimination of All Forms of Racial Discrimination by States parties who have made the necessary declaration under article 14 of the Convention;

**The Committee on the Rights of Persons with Disabilities (CRPD)** may consider individual communications alleging violations of the Convention on the Rights of Persons with Disabilities by States parties to the Optional Protocol to the Convention;

**The Committee on Enforced Disappearances (CED)** may consider individual communications alleging violations of the International Convention for the Protection of All Persons from Enforced Disappearance by

States parties who have made the necessary declaration under article 31 of the Convention.

**The Committee on Economic, Social and Cultural Rights (CESCR)** may consider individual communications alleging violations of the International Covenant on Economic, Social and Cultural Rights by States parties to the Optional Protocol to the International Covenant on Economic, Social and Cultural Rights.

**The Committee on the Rights of the Child (CRC)** may receive and consider individual communications alleging violations of the Convention on the Rights of the Child and its Protocols (OPSC, OPAC) by States parties to the Optional Protocol (on a communications procedure) to the Convention on the Rights of the Child.

**For the Committee on Migrant Workers (CMW)** the individual complaint mechanisms **has not yet entered into force.**

Article 77 of the International Convention on the Protection of the Rights of All Migrant Workers and Members of Their Families gives the Committee on Migrant Workers (CMW) competence to receive and consider individual communications alleging violations of the Convention by States parties who made the necessary declaration under article 77. This individual complaint mechanism will become operative when 10 states parties have made the necessary declaration under article 77. For status of ratifications, click here.

## Against whom can a complaint under a treaty be brought?

A complaint under one of the nine treaties can be brought only against a State that satisfies two conditions:

First, it must be a party (through ratification or accession) to the treaty in question providing for the rights which have allegedly been violated (to check whether a State is party to a treaty, click here, then select the relevant treaty from the list).

Second, the State party must have recognized the competence of the Committee monitoring the relevant treaty to receive and consider complaints from individuals. In the case of the International Covenant on Civil and Political Rights, the Convention on the Elimination of All Forms of Discrimination against Women, the Convention on the Rights of Persons with Disabilities, the International Covenant on Economic, Social and Cultural Rights, and the Convention on the Rights of the Child a State recognizes the Committee's competence by becoming a party to a separate treaty: the Optional Protocol to the Covenant or the Optional Protocol to the Convention (to check whether a State is party to one of the Optional Protocols, click here, then select the relevant Optional Protocol from the list). In the case of the Convention against Torture, the International Convention on the Elimination of All Forms of Racial Discrimination, the International Convention on the Protection of the Rights of All Migrant Workers and Members of Their Families, and the International Convention for the Protection of All Persons from Enforced Disappearance, States recognize the Committee's competence by making a declaration to that effect under a specific article of the Convention (to check whether a State has made either of these declarations, click here, select the relevant Convention, select the relevant State and scroll down to the *Declarations and Reservations* part).

## Who can bring a complaint?

Anyone can lodge a complaint with a Committee against a State that satisfies these two conditions (being a party to the treaty and having accepted the Committee's competence to examine individual complaints), claiming that his or her rights under the relevant treaty have been violated. It is not necessary to have a lawyer prepare the complaint, though legal advice may improve the quality of the submissions. Be aware, however, that legal aid is not provided under the procedures. One may also bring a claim on behalf of another person on condition that his/her written consent is obtained (without requirement as to its specific form). In certain cases, one may bring a case without such consent, for example, where a person is in prison without access to the outside world or is a victim of an enforced disappearance. In these cases, the author of the complaint should state clearly why such consent cannot be provided.

## What information do you need to provide in your complaint?

While a complaint to a Committee, also called a "communication" or a "petition", need not to be presented in a particular format, you are strongly encouraged to use the model complaint form (Model complaint form for complaints under the Optional Protocol to the International Covenant on Civil and Political Rights, the Convention against Torture and the International Convention on the Elimination of Racial Discrimination) and guidelines (Guidelines for complaints under the Optional Protocol to the Convention on the Elimination of All Forms of Discrimination against Women E | F | R | S | C; Fact sheet on the procedure for submitting communications to the Committee on the Rights of Persons with Disabilities under the Optional Protocol to the Convention E | F | R | S | A | C and Guidelines for submission of communications to the Committee on the Rights of Persons with Disabilities under the Optional Protocol to the Convention E | F | R | S | A | C); Guidance and Model Form for submission of communications to the Committee on Enforced DisappearancesE | F | S ). Your claim should be in writing, written legibly, preferably typed, and signed (complaints sent by email should be scanned). Only communications presented in one of the UN languages (Arabic, Chinese, English, French, Russian and Spanish) can be accepted.

The complaint should provide basic personal information - alleged victim's name, nationality, date of birth,

mailing address and email - and specify the State party against which the complaint is directed. If the complaint is brought on behalf of another person, proof of his/her consent should be provided (no specific form required) as noted above, or the author of the complaint should state clearly why such proof cannot be provided. If there are particularly sensitive matters of a private or personal nature that emerge in the complaint, the author of the complaint may request the Committee not to disclose his/her name or the alleged victim's name and/or identifying elements in its final decision so that the identity of the alleged victim or that of the author does not become public. The Committee may also, at its own discretion, decide not to disclose these or other matters in the course of consideration of the complaint.

Final decisions adopted by the Committees are made public. Therefore, if complainants wish their identity not to be disclosed in the final decision, they are requested to so indicate as soon as possible. Due to the level of publicity the Committees' decisions usually receive (including dissemination via Internet, which thus makes the correction and/or deletion of data circulating online virtually impossible), it may not be possible to satisfy requests for anonymity submitted after the publication of the Committees' decisions.

Any subsequent change in address or other contact information should be notified as soon as possible.

Furthermore, it is essential to set out, in chronological order, all the facts on which the complaint is based. The account must be as complete as possible and contain all information relevant to the case. The complainant should also state why he/she considers that the facts described constitute a violation of the treaty in question. It is highly recommended to identify the rights set out in the treaty alleged to have been violated. It is also advisable to indicate the kind of remedies that the complainant would like to obtain from the State party in case the Committee concludes that the facts before it disclose a violation of his/her rights.

The complainant should also detail the steps taken to exhaust the remedies available in the State party against which the complaint is directed, that is steps taken before the State party's local courts and authorities. The requirement to exhaust domestic remedies means that the claims must have been brought to the attention of the relevant national authorities, up to the highest available instance in the State concerned. If some of these remedies are pending or have not yet been exhausted it should also be indicated, as well as the reasons for it. The complainant should state whether he/she has submitted his/her case to another means of international investigation or settlement. On these two matters, see the section entitled "The admissibility of your case" below for further important details.

Complainants should supply copies of all documents (no originals, only copies) of relevance to their claims and arguments, especially administrative or judicial decisions on their claims issued by national authorities. If these documents are not in an official language of the United Nations, a full or summary translation of the documents must be submitted. The documents should be listed in order by date, numbered consecutively and accompanied by a concise description of their contents. The complaint should not exceed 50 pages (excluding annexes). When it exceeds 20 pages, it should also include a short summary of up to five pages highlighting its main elements. As noted above, the information must be provided in one of the UN languages (Arabic, Chinese, English, French, Russian and Spanish).

If the complaint lacks essential information to be processed under these procedures or the description of facts is unclear, the complainant will be contacted by the secretariat of the United Nations (Office of the High Commissioner for Human Rights, OHCHR) with a request for additional details or resubmission. Complainants should be diligent in conducting correspondence with the secretariat and the information requested should be sent as soon as possible and no later than one year. If the information is not received within a year from the date of the request, the file will be closed.

Click here for contact details for lodging complaints with the treaty bodies

## When can you make a complaint under the human rights treaties?

It is important to submit the complaint as soon as possible after the exhaustion of domestic remedies. Delay in submitting the case may make it difficult for the State party to respond properly and for the treaty body to evaluate the factual background thoroughly. In some cases, submission after a protracted period may result in the case being considered inadmissible by the Committee in question:

- According to the Human Rights Committee (the Rules of Procedure, Rule 96 (c)), a delay in submission will not automatically constitute an abuse of the right of submission. "(…) However, a communication may constitute an abuse of the right of submission, when it is submitted after 5 years from the exhaustion of domestic remedies by the author of the communication, or, where applicable, after 3 years from the conclusion of another procedure of international investigation or settlement, unless there are reasons justifying the delay taking into account all the circumstances of the communication";

- Article 14, paragraph 5 of the International Convention on the Elimination of All Forms of Racial Discrimination, states that "In the event of failure to obtain satisfaction from the body established or indicated in accordance with paragraph 2 of this article, the petitioner shall have the right to communicate the matter to the Committee within six months";

- Article 3, paragraph 2(a) of the Optional Protocol of the International Covenant on Economic, Social and Cultural Rights states that "The Committee shall declare a communication inadmissible when: (a) It is not submitted within one year after the exhaustion of domestic remedies, except in cases where the author

can demonstrate that it had not been possible to submit the communication within that time limit";

- Article 7 (h) of the Optional Protocol to the Convention on the Rights of the Child on a communications procedure states that: "The Committee shall declare a communication inadmissible when: (a) It is not submitted within one year after the exhaustion of domestic remedies, except in cases where the author can demonstrate that it had not been possible to submit the communication within that time limit".

## The procedure

Based on the above mentioned requirements, the Committee will decide whether the case should be registered, that is to say formally listed as a case for consideration by the relevant Committee. You will receive advice on registration.

At that point, the case is normally transmitted to the State party concerned to give it an opportunity to comment. The State is requested to submit its observations within a set time frame. The two major stages in any case are known as the "admissibility" stage and the "merits" stage. The "admissibility" of a case refers to the formal requirements that a complaint must satisfy before the relevant Committee can consider its substance. The "merits" of the case are the substance, on the basis of which the Committee decides whether or not the alleged victim's rights under a treaty have been violated. As a general rule, the Committees consider the admissibility jointly with the merits. These stages are described in greater detail below. Once the State replies to the complaint, the complainant is offered an opportunity to comment.

For most Committees, the State party is requested to provide observations within six months, as of the date when the complaint was communicated to that State. If the State party challenges the admissibility of the complaint it can do so by providing arguments within the first two months of that period. The complainant is always given the opportunity of commenting on the State party's observations, within a set time frame.

When comments are received from both parties the case is ready for a decision by the relevant Committee. If the State party fails to respond to the complaint, even after receiving several reminders from the secretariat, the Committee will take a decision on the case based on the information submitted by the complainant.

## Special circumstances of urgency or sensitivity

Some Committees may, at any stage before the case is considered, issue a request to the State party for "interim measures" in order to prevent any irreparable harm to the author or alleged victim in the particular case. Typically, such requests are issued to prevent actions that cannot later be undone, for example the execution of a death sentence or the deportation of an individual facing a risk of torture. A decision to issue a request for interim measures does not imply a determination on the admissibility or the merits of the communication but it must have a reasonable likelihood of success on the merits for it to be concluded that the alleged victim would suffer irreparable harm. If the complainant wishes the Committee to consider a request for interim measures, he/she should state it explicitly, and explain in detail the reasons why such action is necessary.

It takes several working days for a Committee to process a request for interim measures. Any such request should therefore reach the Secretariat as early as possible before the action sought to be prevented could materialize.

A Committee may withdraw a request for interim measures on the basis of information received from the State party and the author/s of the complaint suggesting that such measures are no longer required.

## The admissibility of the complaint

Before the Committee can consider a complaint on its merits or substance, it must be satisfied that the formal requirements of admissibility are met. When examining admissibility, the Committee may consider one or several of the following factors:

- If the complainant acts on behalf of another person, has he/she obtained sufficient authorization or has he/she otherwise justified the reasons in doing so?;
- Is the complainant (or the person on whose behalf the complaint is brought) a victim of the alleged violation? It has to be shown that the alleged victim is personally and directly affected by the law, policy, practice, act or omission of the State party which constitute the object of the complaint. It is not sufficient simply to challenge a law or State policy or practice in the abstract (a so-called *actio popularis*) without demonstrating how the alleged victim is individually affected;
- Is the complaint compatible with the provisions of the treaty invoked? The alleged violation must relate to a right actually protected by the treaty. If the complainant has filed a complaint under the Optional Protocol to the International Covenant on Civil and Political Rights, for example, he/she cannot claim a violation of the right to property since the Covenant does not protect that right. In such a case, the claim would be, in legal terms, inadmissible *ratione materiae;*
- Is the Committee in question required to review the facts and evidence in a case already decided by national courts?The Committees are competent to consider possible violations of the rights guaranteed by the treaties concerned, but are not competent to act as an appellate instance with respect to national

courts and tribunals. Thus, the Committees cannot in principle examine the determination of administrative, civil or criminal liability of individuals, nor can they review the question of innocence or guilt;

- Is the complaint sufficiently substantiated? If the relevant Committee considers, in the light of the information before it, that the complainant has not sufficiently presented/ described the facts and arguments for a violation of the Covenant, it may reject the case as insufficiently substantiated, and thus inadmissible;

- Does the complaint relate to events that occurred after the entry into force of the complaint mechanism for the State party concerned? As a rule, a Committee does not examine complaints where the facts occurred prior to this date. If this is the case, the complaint would be regarded as inadmissible *ratione temporis*. There are, however, exceptions to this rule, for instance in cases where the effects of the event in question result in a continuous violation of the treaty;

- Has the same matter been submitted to another international body? If it has been submitted to another treaty body or to a regional mechanism such as the Inter-American Commission on Human Rights, the European Court of Human Rights, the African Commission on Human and Peoples' Rights, or the African Court on Human and Peoples' Rights, the Committees cannot examine the complaint. The aim of this rule is to avoid unnecessary duplication at the international level. This is an issue that the complainant should indicate in the original complaint, specifying the body to which it was submitted;

- Have all domestic remedies been exhausted? A cardinal principle governing the admissibility of a complaint is that the complainant must have exhausted all relevant remedies that are available in the State party before bringing a claim to a Committee. This usually includes pursuing the claim through the local court system. The mere doubts about the effectiveness of a remedy do not, in the Committees' view, dispense with the obligation to exhaust it. There are, however, exceptions to this rule, when proceedings at the national level have been unreasonably prolonged, or the remedies are unavailable or would plainly be ineffective. The complainant should, however, give detailed reasons why the general rule should not apply. On the issue of exhaustion of domestic remedies, the complainant should describe in his/her initial submission the efforts he/she has made to exhaust local remedies, specifying the claims advanced before the national authorities and the dates and outcome of the proceedings, or alternatively stating why any exception should apply;

- Is the complaint precluded by a reservation made by the State to the treaty in question? Reservations are formal statements by which States limit the obligations that they accept under a particular provision of a treaty. A State may have entered a substantive reservation to the treaty or a procedural reservation to the complaint mechanism limiting the Committee's competence to examine certain complaints. For example, States may preclude a Committee's consideration of claims that have in the past been considered by another international mechanism (for reservations to a specific treaty, click here, then select the relevant Convention, the relevant State and scroll down to the *Declarations and Reservations* part);

- Is the complaint an abuse of the procedure? In some cases, the Committees may consider the claims to be frivolous, vexatious or otherwise inappropriate use of the complaint procedure and reject them as inadmissible, for example if the same individual brings repeated claims to the Committee on the same issue when the previous identical ones have already been dismissed.

## The merits of the complaint

Once a Committee considers a complaint admissible, it proceeds to consider it on its merits, stating its reasons for concluding that a violation has or has not occurred under the applicable treaty provisions. As noted above, a number of States have also entered substantive reservations that may limit the scope of the human rights obligations they assume under the treaties. In most cases, a Committee will decline to consider complaints falling within areas covered by a reservation, though in exceptional circumstances, it may find a reservation impermissible and consider the case despite the purported reservation.

Information on what a Committee considers to be the scope of the rights contained in the treaty for which it is responsible can be found in its decisions on individual cases (see the treaty body documents search database or the webpage of each Committee), its so-called "General Comments" interpreting the meaning of various articles, and its concluding observations on reports submitted periodically by States parties to the treaty concerned (complainants may wish to consult the Universal Human Rights Index database). These documents are accessible on the OHCHR web site. There are also numerous academic articles and textbooks on the jurisprudence of the various Committees that may be of assistance.

## Consideration of the complaint

The Committees consider each case in closed session. Although some Committees have provisions for oral components of proceedings in their rules of procedure (see the description below of the Committee against Torture and the Committee on the Elimination of Racial Discrimination), the practice has been to consider complaints only on the basis of the written information supplied by the complainant and the State party. Accordingly, it has not been the practice to receive oral submissions from the parties or audio or audio-visual evidence (such as audio and video files). Nor do the Committees go beyond the information provided by the parties to seek independent verification of the facts.

As a general rule and in order to speed up the procedure, the Committees examine the admissibility of a complaint jointly with the merits. In this case, the general procedure set out above applies, that is, once the communication is received and registered, it is transmitted to the State party concerned to give it an opportunity to comment, within a set time frame. The complainant is then offered an opportunity to comment on the State party's observations, following which the case is normally ready for consideration on admissibility and merits by the Committee. However, there are situations where the Committee decides to examine the admissibility first. In this case the State party is requested to make submissions on the merits if the Committee declares that the complaint is admissible. The complainant will in any case have the opportunity to comment on the State party's submissions on the merits.

Once the Committee takes a decision on the case, it is transmitted to the complainant and the State party simultaneously. One or more Committee members may append a separate opinion to the decision if they come to a different conclusion from the majority or perhaps reach the same conclusion but for different reasons. The text of any final decision on the merits of the case or of a decision of inadmissibility will be posted on the OHCHR's web site as part of the Committee's jurisprudence.

## What happens once a Committee decides a case?

It should be noted at the outset that there is no appeal against Committee decisions and that, as a rule, the decisions are final. What happens to the case subsequently depends on the nature of the decision taken.

- When the Committee decides that the facts before it disclose a violation by the State party of the complainant's rights under the treaty, it invites the State party to supply information within a set time frame on the steps it has taken to give effect to its findings and recommendations.
- When the Committee decides that there has been no violation of the treaty or that the complaint is inadmissible, the case is closed.

The Committees' decisions represent an authoritative interpretation of the treaty concerned. They contain recommendations to the State party. All Committees have developed procedures to monitor whether States parties have implemented their recommendations (so-called follow-up procedures), since they consider that by accepting the procedure, States parties have also accepted to respect the Committee's findings.

When the Committee concludes that a violation of the Covenant has taken place, the State is invited to provide information, within 180 days, on the steps it has taken to implement the recommendations. The State's response is then transmitted to the complainant for comments. If the State party fails to take appropriate action, the case is kept under consideration by the Committee under the follow-up procedure. A dialogue is thus pursued with the State party and the case remains open until satisfactory measures are taken. Information related to follow-up to the Committees' Views and recommendations is not confidential and the meetings during which this information is discussed are public.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the Optional Protocol to the International Covenant on Civil and Political Rights

The International Covenant on Civil and Political Rights, adopted in 1966, covers a broad range of civil and political rights such as the right to life, the right to a fair trial, freedom of expression, equality before the law and prohibition of discrimination. Individual rights that may be invoked before the Committee are set out in articles 6 to 27 inclusive, comprising Part III of the Covenant. The complaint mechanism for alleged violations of those articles is contained in the First Optional Protocol to the Covenant, a separate treaty open to States parties to the Covenant. States that have become a party to the Optional Protocol recognize the competence of the Human Rights Committee – a panel of 18 independent experts who meet three times a year – to receive complaints from persons within their jurisdiction alleging violations of their rights under the Covenant (for more information on the Human Rights Committee, see Fact Sheet No.15 and the Committee's webpage).

### Additional pointers on the procedure before the Committee

The following comments expand on the general description of procedures before the Committees.

Complaints under the Optional Protocol to the Covenant that contain the necessary prima facie elements are referred to the Committee's Special Rapporteur on New Communications and Interim Measures, who decides whether the case should be registered and transmitted to the State party for observations. Given the large number of complaints submitted to the Committee, there may be a delay of several years between the initial submission and the Committee's final decision.

Under the Optional Protocol, there is no time limit to submit complaints to the Committee. However, in order to prevent possible abuse in this respect the Committee introduced a rule in its rules of procedure (current Rule 96 (c)) regarding delays in submission. According to it, a delay in submission will not automatically constitute an abuse of the right of submission. However, there might be abuse when the complaint is

submitted after five years from the exhaustion of domestic remedies or, where applicable, after three years from the conclusion of another procedure of international investigation or settlement, unless there are reasons justifying the delay taking into account all the circumstances of the case.

The Human Rights Committee cannot examine a complaint if the same matter is at the same time being examined by another mechanism of international investigation or settlement. Some States parties have made reservations to exclude the competence of the Committee not only to cases being examined but also to cases that have been examined and decided by another international mechanism. The Committee considers that the Human Rights Council Complaint Procedure (previously known as 1503 procedure) and complaints submitted to special rapporteurs or working groups of the Human Rights Council do not constitute such a mechanism. Accordingly, a complaint to the Human Rights Committee will not be declared inadmissible if it has been submitted to these mechanisms.

As to what constitutes "the same matter", the Committee understands it as relating to the same author, the same facts and the same substantive rights. Facts that have been submitted to another international mechanism can be brought before the Committee if the Covenant provides for a broader protection. Furthermore, complaints dismissed by other international mechanisms on procedural grounds are not considered to have been substantively examined; the same facts may therefore be brought before the Committee.

The Human Rights Committee has developed some exceptions to the rule that it cannot examine facts occurred before the entry into force of the Optional Protocol for the State concerned. Thus, it is usually a sufficient ground for the Committee to examine the complaint if, after the date of entry into force of the Optional Protocol, there has been a court decision or some other State act validating the facts preceding that date which constitute the purpose of the complaint.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment

The Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment was adopted on 10 December 1984. The treaty prohibits torture and cruel, inhuman or degrading treatment or punishment and, among other obligations, requires States parties not to return persons to countries where there are substantial grounds for believing they would face torture and imposes a series of measures aimed at ensuring that acts of torture, wherever they are committed, are appropriately investigated and prosecuted. The substantive obligations are set out in articles 1 to 16, comprising Part I of the treaty. The complaint mechanism for invoking breaches of rights under the Convention is contained in article 22. States parties that so wish may make a declaration under that article recognizing the competence of the Committee against Torture - a panel of 10 independent experts that meets twice a year - to consider complaints from individuals alleging violations of their rights under the Convention by that State (for more information on the Committee against Torture, see Fact Sheet No.17 and the Committee's webpage).

### Additional pointers on the procedure before the Committee

A complaint will be declared inadmissible not only if it is under examination by another procedure of international investigation or settlement but also if the same matter has been the subject of a decision in the past under such procedure (see article 22, paragraph 4(a) of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment). Moreover, the Committee's rules of procedure state that a complaint may be rejected as inadmissible if the time elapsed since the exhaustion of domestic remedies is so unreasonably prolonged as to render consideration of the complaint by the Committee or the State party unduly difficult.

When examining the case the Committee may, on the basis of its rules of procedure, invite the parties to be present at specified closed meetings of the Committee in order to provide further clarification or to answer questions on the merits of the complaint. However, such instances are exceptional rather than routine and a case will not be prejudiced should the complainant fail to attend in person.

When the Committee finds that a State action or proposed action, for example in the case of a pending removal to a country where a person might be at risk of torture, has violated or would violate the State party's obligations under the Convention, it forwards its decision to the State party with a request for information on the implementation of the recommendations within 90 days. In the light of the information provided, the Committee will take such further action as may be appropriate under its follow-up procedure.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the International Convention on the Elimination of All Forms of Racial Discrimination

The International Convention on the Elimination of All Forms of Racial Discrimination, adopted on 21 December 1965 sets out a series of obligations for States parties to ensure legal and practical enjoyment of the right to be free from racial discrimination. The Convention is a specialized treaty that deals with a wide variety of issues arising in this area in greater detail. The substantive obligations are set out in articles 1 to 7 of the Convention, comprising Part I of the treaty. States parties that so wish may make a declaration under article 14 accepting the competence of the Committee on the Elimination of Racial Discrimination - a panel of 18 independent experts that meets twice a year - to consider complaints from an individual or group of individuals alleging violations of their rights under the Convention by that State (for more information on the Committee on the Elimination of Racial Discrimination, see Fact Sheet No. 12 and the Committee's webpage).

Under paragraph 2 of article 14, a State party may designate a national body which will be competent to receive and consider petitions from individuals and groups of individuals who claim to be victims of a violation of their rights set forth in the Convention and who have exhausted other available local remedies.

**Additional pointers on the procedure before the Committee**

Complaints under this Convention may be brought not only by or on behalf of individuals but also by or on behalf of groups of individuals. The complaints must be submitted *within six months* of the final decision by a national authority in the case.

The fact that the same matter is pending before or has been the subject of a decision under another international procedure will not be considered an obstacle to the admissibility of the complaint.

Upon registration of the complaint, the State party has three months to present submissions on the admissibility of the complaint or, if it has no objection to the admissibility, on the merits. If the State party challenges the admissibility, the complainant will have six weeks to comment on the State party's observations. After that, the Committee will take a decision on admissibility. If the Committee concludes that the case is admissible, the State party has three further months to present observations on the merits. The complainant will then have six weeks to comment before the Committee takes a final decision on the merits of the case. Alternatively, if the State party has no objection to the admissibility of the complaint and presents its submissions solely on the merits, the complainant will also have six weeks to comment before the Committee takes a final merits decision.

The rules of procedure (rule 94, paragraph 5) of the Committee on the Elimination of Racial Discrimination authorize it to invite the person filing the complaint (or his/her representative) and State party representatives to attend the proceedings in order to provide additional information or to answer questions on the merits of the case. However, such instances are exceptional rather than routine and a case will not be prejudiced should the complainant fail to attend in person.

When the Committee takes a decision (called an "Opinion") on the merits of a complaint, it often makes suggestions and/or recommendations, even if it has concluded that there has been no violation of the Convention. These suggestions or recommendations may be general or specific and addressed either to the State party in question or to all States parties to the Convention.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the Optional Protocol to the Convention on the Elimination of All Forms of Discrimination against Women

The Convention on the Elimination of All Forms of Discrimination against Women, adopted on 18 December 1979, guarantees the right of all women to be free from discrimination and sets out obligations for States parties designed to ensure legal and practical enjoyment of that right. The Convention is a specialized treaty that deals with a wide variety of issues arising in this area. The substantive obligations are set out in articles 1 to 16 of the Convention, comprising Parts I to IV.

The complaints mechanism for the Convention is contained in an Optional Protocol, which was adopted on 6 October 1999. It is a separate treaty open to States parties to the Convention. States that have become a party to the Optional Protocol recognize the competence of the Committee on the Elimination of Discrimination against Women – a panel of 23 independent experts that meets three times a year – to receive complaints from persons within their jurisdiction alleging violations of their rights under the Convention (for more information about the Committee, see its webpage).

Claims dealt with by the Committee under the complaint procedure have included issues such as women being victims of domestic violence who did not enjoy adequate protection from State authorities; coerced sterilization; stereotypes affecting women's right to a fair and just trial; absence of laws and regulations governing access to therapeutic abortion; conditions of detention not adapted to the specific needs of women; or inappropriate medical treatment in connection with pregnancy resulting in the victim's death.

Complaints may be submitted by or on behalf of individuals or groups of individuals alleging a violation of their rights protected by the Convention on the Elimination of Discrimination against Women. The State against which the complaint is directed must be a party to the Optional Protocol (to check whether a State is

party to the Optional Protocol, click here, then select *Optional Protocol to the Convention on the Elimination of All Forms of Discrimination against Women* from the list). If a complaint is submitted on behalf of one or more persons, the author must either show proof of their consent or justify acting on their behalf without their consent.

With regard to the material to be submitted, see the Guidelines for complaints under the Optional Protocol to the Convention on the Elimination of All Forms of Discrimination against Women.

There is no time limit as such for the submission of communications but, as already noted, it is best to file complaints expeditiously, following exhaustion of domestic remedies.

**Additional pointers on the procedure before the Committee**

A complaint will be inadmissible not only if it *is being* examined by another procedure of international investigation or settlement but also if it *has been* examined under such procedure.

When the Committee takes a decision (formally called "Views") on the merits of a case, it also makes recommendations on the remedies to be adopted by the State party. The recommendations can be of a general nature, addressing policy issues in the State party, and specific ones, adapted to the case in question. The kinds of recommendations that the Committee make include: Measures to end ongoing violations against the victim; restitution, compensation and rehabilitation for the victim; law reform and changes in policies and practices that are in violation of the Convention; steps to prevent the repetition of the violation found.

The State party is required, within six months of receiving the Committee's decision and recommendations, to submit a written response detailing any action taken thereon. The Committee may subsequently invite the State party to submit further information. This may take the form of an update in the State party's subsequent periodic report (submitted by State parties under article 18 of the Convention) to the Committee.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the Optional Protocol to the Convention on the Rights of Persons with Disabilities

The Convention on the Rights of Persons with Disabilities, adopted on 13 December 2006, promotes the full enjoyment by persons with disabilities of their human rights and fundamental freedoms and sets out obligations for States parties designed to ensure legal and practical enjoyment of these rights and freedoms. The Convention is a specialized treaty that deals in greater detail with the rights of persons with disabilities.

The complaints mechanism under the Convention is established by an Optional Protocol thereto, which was adopted on 13 December 2006. It is a separate treaty open to States parties to the Convention. States that have become a party to the Optional Protocol recognize the competence of the Committee on the Rights of Persons with Disabilities – a panel of 18 independent experts that meets twice a year – to receive complaints from individuals subject to their jurisdiction who claim to be victims of a violation by the State party concerned of the provisions of the Convention (for more information on the Committee, see its webpage).

Complaints may be submitted by or on behalf of individuals or groups of individuals alleging a violation of their rights protected by the Convention on the Rights of Persons with Disabilities. The State party against which the complaint is directed must be a party to the Optional Protocol to the Convention (to check whether a State is party to the Optional Protocol, click here, then select *Optional Protocol to the Convention on the Rights of Persons with Disabilities* from the list). If a complaint is submitted on behalf of one or more individuals, the author of the complaint must possess an authorisation to act on their behalf (please include a confirmation of authorisation, a signed statement will suffice). Any person submitting complaints on behalf of individuals or groups of individuals without evidence of consent shall provide a written justification as to why the alleged victim(s) cannot submit the communication in person and why a confirmation of authorisation cannot be provided.

There is no time limit as such for the submission of complaints but, as already noted, it is best if complaints are filed expeditiously, following exhaustion of domestic remedies.

With regard to the material to be submitted, see the procedures described above, Fact sheet on the procedure for submitting communications to the Committee on the Rights of Persons with Disabilities under the Optional Protocol to the Convention and Guidelines for submission of communications to the Committee on the Rights of Persons with Disabilities under the Optional Protocol to the Convention). Complaints are to be submitted in writing or in an alternative format that enables a legible copy of its content to be transmitted to the State party.

**Additional pointers on the procedure before the Committee**

Complaints are to be submitted in writing or in an alternative format that enables a legible copy of its content to be transmitted to the State party.

A complaint will be inadmissible not only if the same matter *is being* examined under another procedure of

International investigation or settlement but also if it *has already been* examined by such procedure or the Committee.

The Committee on the Rights of Persons with Disabilities applies the criteria set forth in article 12 of the Convention on the Rights of Persons with Disabilities, recognizing the legal capacity of the author or alleged victim before the Committee, regardless of whether this capacity is recognized in the State party against which the complaint is directed.

Under its rules of procedure the Committee can obtain, through the Secretary-General of the United Nations, any documentation from organizations within the United Nations system or other bodies that may be of assistance in the consideration of the complaint. In this case, to preserve procedural equity, each party will be afforded an opportunity to comment on such documentation or information within fixed time limits.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the International Convention for the Protection of All Persons from Enforced Disappearance

The International Convention for the Protection of All Persons from Enforced Disappearance, adopted on 20 December 2006, imposes obligations on States parties to protect all persons from enforced disappearance and to combat impunity for the crime of enforced disappearance. The substantive obligations are set out in articles 1 to 25 of the Convention, comprising Part I. The Convention establishes an individual complaint mechanism. States parties that so wish may make a declaration under article 31 accepting the competence of the Committee on Enforced Disappearance - a panel of 10 independent experts meeting twice a year - to consider complaints from individuals subject to its jurisdiction alleging violations of their rights under the Convention by that State.

It is important to note that according to article 35 of the Convention, the Committee has competence solely in respect of enforced disappearance which commenced after the entry into force of the Convention. In case a State became party to the Convention after its entry into force, the obligations of that State vis-à-vis the Committee shall relate only to enforced disappearances which commenced after the entry into force of the Convention for the State concerned (for more information on the Committee, see its webpage).

The Committee should be distinguished from the Working Group on Enforced or Involuntary Disappearances, a body composed of five independent experts established in 1980 by the then United Nations Commission on Human Rights. The Working Group examines cases of enforced disappearance alleged to have occurred in any part of the world. However, contrary to the Committee, the Working Group's basic mandate is not to monitor the implementation of the Convention in the States parties to it, but to assist relatives to ascertain the fate and whereabouts of their disappeared family members.

Individuals subject to the jurisdiction of a State party that has made the declaration under article 31 (or persons acting on their behalf) may submit a communication to the Committee, claiming that their individual rights set out in the Convention have been violated by the State party.

With regard to the material to be submitted, see the Guidance and Model Form for submission of communications to the Committee on Enforced Disappearances.

### Additional pointers on the procedure before the Committee

A complaint will be considered inadmissible if the same matter is being examined under another procedure of international investigation or settlement of the same nature.

When the Committee communicates a complaint to a State party the latter must provide, within four months, written explanations or statements that relate to the admissibility and the merits, as well as to any remedy that may have been provided in the matter.

At any time after the receipt of a complaint and before a conclusion on the merits has been reached, the Committee may consult relevant documentation from United Nations bodies, specialized agencies, funds, programmes and mechanisms and other international organizations, including relevant regional intergovernmental organizations or bodies as well as all relevant State institutions, agencies or offices that may assist in the examination of the case. However, the Committee must afford the State and the complainant an opportunity to comment on such information within fixed time limits.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the International Convention on the Protection of the Rights of All Migrant Workers and Members of Their Families (*this individual complaint mechanism has not yet entered into force*)

The International Convention on the Protection of the Rights of All Migrant Workers and Members of Their

Families, adopted on 18 December 1990, imposes obligations on States parties to protect and guarantee a comprehensive range of rights on behalf of migrant workers and their families. The substantive obligations are set out in articles 7 to 71 of the Convention, comprising Parts II to VI. The Convention contains its own individual complaint mechanism. States parties that so wish may make a declaration under article 77 accepting the competence of the Committee on the Protection of the Rights of All Migrant Workers and Members of Their Families – a panel of 14 independent experts meeting twice a year – to consider complaints from an individual or group of individuals alleging violations of their rights under the Convention by that State (for more information on the Committee, see Fact Sheet No. 24 and the Committee's webpage). The individual complaint mechanism will enter into force when ten States parties to the Convention have made a declaration under article 77 of the Convention.

As the Convention's complaint mechanism has not yet entered into force, the Committee has not yet developed rules of procedure and practice relating to individual complaints. It may, however, be expected to adopt similar procedures to those applied by the other treaty bodies and to interpret similarly the elements of admissibility set out in article 77 of the Convention.

As the Convention's complaint mechanism has not yet entered into force, the Committee has not yet developed rules of procedure and practice relating to individual complaints. It may, however, be expected to adopt similar procedures to those applied by the other treaty bodies and to interpret similarly the elements of admissibility set out in article 77 of the Convention.

Once the complaint mechanism has entered into force, individuals subject to the jurisdiction of a State party that has made the declaration under article 77 (or persons acting on their behalf) may make complaints to the Committee, claiming that their individual rights set out in the Convention have been violated by the State party.

It is worth noting that a complaint will not be admissible if the same matter has been or is being examined under another procedure of international investigation or settlement.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the Optional Protocol to the International Covenant on Economic, Social and Cultural Rights

The International Covenant on Economic, Social and Cultural Rights, adopted in 1966, imposes obligations on States parties to take steps, individually and through international assistance and co-operation, to the maximum of its available resources, with a view to achieving progressively the full realization of economic, social and cultural rights. The complaints mechanism for the Convention is contained in an Optional Protocol, which was adopted on 10 December 2008. It is a separate treaty open to States parties to the Covenant. States that have become a party to the Optional Protocol recognize the competence of the Committee on Economic, Social and Cultural Rights (CESCR) – a panel of 18 independent experts that meets twice a year – to receive complaints from persons within their jurisdiction alleging violations of their rights under the Convention (for more information on the Committee, see its webpage).

In 2012, the Committee adopted the rules of procedure to be applied to complaints submitted under the Optional Protocol.

Complaints may be submitted by or on behalf of individuals or groups of individuals. If a complaint is submitted on behalf of individuals or groups of individuals, the author of the complaint must either show proof of their consent or justify acting on their behalf without their consent.

Under the Optional Protocol, the Committee has the competence to facilitate friendly settlements in complaints submitted to it, at any time of the procedure and before a final decision on the merits has been reached. The friendly settlement procedure will be conducted on the basis of consent of the parties and will be confidential. The Committee may terminate its facilitation of the procedure if it concludes that the matter is not susceptible to reaching a resolution or any of the parties does not consent to its application, decides to discontinue it, or does not display the requisite will to reach a friendly settlement based on respect for the obligations set forth in the Covenant. Once both parties have expressly agreed to a friendly settlement, the Committee shall adopt a decision with a statement of the facts and of the solution reached. In all cases, the friendly settlement must be based on respect for the obligations set forth in the Covenant. If no friendly settlement is reached, the Committee shall continue the examination of the complaint in accordance with the normal procedure.

Under the Optional Protocol, State parties are required to take appropriate measures to ensure that individuals under their jurisdiction are not subjected to any form of ill-treatment or intimidation as a consequence of communicating with the Committee in connection with a complaint submitted to it. Where the Committee receives reliable information that a State party has not complied with this obligation it may request the State to provide explanations and adopt measures to put an end to the situation.

The Committee may, if necessary, decline to consider a complaint where it does not reveal that the author has suffered a clear disadvantage, unless the Committee considers that the complaint raises a serious issue

of general importance.

**Additional pointers on the procedure before the Committee**

The Optional Protocol sets a time-limit to submit complaints to the Committee. A complaint must be submitted within one year of the exhaustion of domestic remedies, except in cases where the author can demonstrate that it had not been possible to submit the complaint within that time limit.

At any time after the receipt of a complaint and before a conclusion on the merits has been reached, the Committee may consult relevant documentation from United Nations bodies, specialized agencies, funds, programmes and mechanisms, and other international organizations, including from regional human rights systems that may assist in the examination of the case, provided that the Committee shall afford the State party and the complainant an opportunity to comment on such documentation.

When examining complaints, the Committee will consider the reasonableness of the steps taken by the State party regarding the implementation of the rights set forth in the Covenant. In doing so, the Committee will bear in mind that the State party may adopt a range of possible policy measures for such implementation.

The Committee may request the State party to include information on any action taken in response to its Views, recommendations or friendly settlement agreements in its periodic reports on the general implementation of the Covenant.

Click here for contact details for lodging complaints with the treaty bodies

## Procedure under the Optional Protocol to the Convention on the Rights of the Child to provide a communication procedure

The Convention on the Rights of the Child, adopted on 20 November 1989, imposes obligations on States parties to respect the rights of the child. The substantive obligations are set out in articles 1 to 41 of the Convention, comprising Part I, as well as in its two additional substantive obligations: the Optional Protocol on the sale of children, child prostitution and child pornography and the Optional Protocol on the involvement of children in armed conflict. The complaints mechanism for the Convention is contained in the Optional Protocol on a communications procedure, which was adopted on 19 December 2011. It is a separate treaty open to States parties to the Convention and its two substantive Optional Protocols thereto. States that have become a party to the Optional Protocol on a communications procedure recognize the competence of the Committee on the Rights of the Child (CRC) – a panel of 18 independent experts that meets three times a year - to receive complaints from persons within their jurisdiction alleging violations of their rights under the Convention and its two substantive Optional Protocols (for more information on the Committee, see its webpage).

In January 2013, the Committee adopted the rules of procedure to be applied to the complaints submitted under the Optional Protocol. Complaints may be submitted by an individual or group of individuals claiming to be victim(s) of a violation of the Convention and/or the substantive Optional Protocols thereto, regardless of whether their legal capacity is recognized in the State party against which the complaint is directed. Complaints may also be submitted by their designated representatives, or by others acting on behalf of the alleged victim(s) with their express consent. According to the Committee's rules of procedure, where there is a concern that representation, despite the victim's consent, may be a result of improper pressure or inducement, the Committee may request additional information or documents, including from third party sources, that show that the submission of a complaint on the alleged victim's behalf is not a result of improper pressure or inducement and is in the best interests of the child.

Complaints may be submitted on behalf of the alleged victim without such express consent, provided that the complainant can justify his/her action and the Committee deems it to be in the best interests of the child. If possible, the alleged victim, on whose behalf the complaint is presented, may be informed of the complaint and his/her views shall be given due weight in accordance with their age and maturity.

The Committee has the competence to facilitate friendly settlements in complaints submitted to it. A friendly settlement must be based on respect for the obligations set forth in the Convention and/or the substantive Optional Protocols thereto. The Committee will not accept any friendly settlement that is not based on the respect of such obligations.

**Additional pointers on the procedure before the Committee**

The Optional Protocol sets a time-limit for initial submissions. A complaint must be submitted within one year of exhaustion of domestic remedies, except in cases where the complainant can demonstrate that it had not been possible to submit the case within this time limit.

A complaint is inadmissible if the same matter has already been examined by the Committee or has been or is being, examined under another procedure of international investigation or settlement.

The Committee may decide to invite the complainant and/or alleged victim as well as representatives of the State party concerned in order to provide, in person or by way of video or teleconference, further

clarifications or to answer questions on the merits of the case, provided that the Committee deems it to be in the best interests of the child. Any hearing shall be conducted in a closed meeting. The hearings of alleged victims will not be conducted in the presence of State representatives, unless the alleged victims so request and the Committee deems it in the best interests of the children. The Committee will guarantee child-sensitive procedures at hearings of the alleged victims and ensure that their views are given due weight in accordance with their age and maturity.

Click here for contact details for lodging complaints with the treaty bodies

## How to direct complaints to the treaty bodies

For complaints to the Human Rights Committee, the Committee against Torture, the Committee on the Elimination of Racial Discrimination, the Committee on the Elimination of Discrimination against Women, the Committee on the Rights of Persons with Disabilities, and the Committee on Enforced Disappearance direct your correspondence and inquiries to:

| | |
|---|---|
| Mail | Petitions and Inquiries Section<br>Office of the High Commissioner for Human Rights<br>United Nations Office at Geneva<br>1211 Geneva 10, Switzerland |
| Fax | + 41 22 917 90 22<br>(particularly for urgent matters) |
| Email | petitions[at]ohchr.org |

A considerable number of other avenues exist for bringing individual complaints. Under the United Nations Secretariat, complainant can consider submitting a complaint before the Human Rights Council Complaint Procedure (previously known as 1503 procedure) and the mandate-holders (special rapporteurs and working groups) of the Human Rights Council. Moreover, complainants can consider submitting also complaints before the organizations forming part of the wider United Nations family such as the International Labour Organization and the United Nations Educational, Scientific and Cultural Organization.

Home

Frequently Asked Questions

OHCHR on Social Media

OHCHR Memorial

Employment

Mobile App

Site Map

© OHCHR 1996-2020

CONTACT US



RECEIVED
JUL 06 2020
USMS

USMS
SDNY

Attn:
Pro se
Intake

Natasha Armstrong
P.O. Box 521
Glenmont NY
12077